THOMAS MASON *versus* DENNIS SPRAGUE.

A permit from the Land Agent to cut timber on the State lands is valid, although it does not appear whether the holder gave the bond required by the statute. The bond is a matter subsequent to, and independent of, the permit.

But if the permit has been void, and the holder a trespasser, his creditor, attaching lumber cut under color of it, would have no better title than his assignee or vendee.

A permit to cut timber generally, authorizes the holder to cut spruce timber, although the price of such timber is not stipulated in the instrument, but is stated on another page in the handwriting of the Land Agent.

Such a permit may be assigned as security for supplies already advanced, or to be furnished at a subsequent time.

Where the holder assigned the permit and the logs he had cut under its authority, and his assignee assigned the same to a third person, who took and retained for two months undisturbed possession of the logs cut before the first assignment, such possession was sufficient to perfect the title of the second assignee, although there had been no formal delivery in either case.

REPLEVIN.    On report by HATHAWAY, J.

Rufus B. Philbrick, Nov. 17, 1855, received a permit from the Land Agent to enter on township B, range 10, with one four ox team, and to cut and remove timber therefrom until May following.    The prices of spruce timber were minuted on the permit, but not set forth in it.    January 12, 1856, Philbrick assigned the permit to S. E. Crocker, together with the lumber cut and to be cut under it.    May 13, 1857, Crocker assigned the permit and lumber cut under it to the plaintiff. Mason testified that when he took the latter assignment, he advanced $500, and paid about $15 boomage and stumpage; the logs were then in the river, and were daily expected in the boom; they came into the boom early in June, and he employed persons to take care of them, and had them in possession about two months before the defendant attached them.

The defendant introduced an agreement between Crocker and Philbrick, made at the time when Philbrick assigned to Crocker, by which Crocker bound himself, in consideration of

the assignment, to furnish Philbrick with supplies and money to pay his employees.

He also introduced Philbrick, who testified that, when he assigned the permit to Crocker, he had about 735 spruce and 50 pine logs cut; that he never delivered the logs formally to Mason, and was never on the logs at the same time with Mason; that he employed a man to take care of them, but afterwards told him when he wanted money to go to Mason; that Mason furnished witness with some money, and Crocker paid him $150 and more; that the logs were driven about three miles the first year, and laid over till the next spring, and reached the boom in June, 1857; that the workmen were mostly paid by money furnished as aforesaid; that there were 2442 or 2542 logs, including about 300 pine, all of the same mark, and those cut before and after assignment mixed together. Witness held the logs subject to Crocker's title, always intending he should have his pay out of them. The wages of the men in the woods amounted to $700 or $800, mostly paid by Crocker. Witness sold the logs, by consent of the plaintiff.

The plaintiff introduced Crocker, who testified that Mason's account with the logs, Dr. $1509,91, Cr. $1403,04, balance $106,87, was correct; that he had advanced $2400 or $2500 to Philbrick on account of the logs.

Mason was recalled and testified that his account with the logs was drawn from his books, and the balance was still due him.

The defendant was a deputy sheriff, and attached the logs on several writs as the property of Philbrick. On some of the writs, judgment had been obtained, and executions issued and seasonably put in the hands of the officer.

The plaintiff in this action claims 267 pine and 2113 spruce logs of the logs attached.

The case was submitted to the Court on the facts as reported, a nonsuit or default to be entered as the Court should determine.

*Rowe* and *Bartlett*, for the plaintiff, argued that the plaintiff owned the logs, subject to the State's claim for stumpage, with the right to immediate and exclusive possession, and may therefore maintain this action. 2 Greenl. Ev., 561, and cases cited.

The logs cut after the assignment were cut by Philbrick as the servant of Crocker. Philbrick had but a special property in those cut before the assignment, which passed by the assignment, and no formal delivery was necessary. But the fact that Philbrick intermingled them with those cut afterwards, of the same description and marks, made them all alike the property of Crocker. *Loomis* v. *Green*, 7 Greenl., 386. But if the logs cut before the assignment were the property of Philbrick, it would not aid the defendant. He does not show that he attached those logs. He did not sever them from the others, and does not pretend to identify them. The number replevied is 162 less than the number cut, a difference more than equal to all those cut before the assignment.

Another question must trouble the defendant. How many logs did he attach? He returns a certain number attached on each writ, but nothing shows that those attached on one writ are not the same returned on the other; so that he can claim only the largest number named in any one return.

The defendant returns that he has attached the logs, not as the property of Philbrick or any other person, but to enforce a lien for labor. But his writs do not authorize any such attachment. *Redington* v. *Frye*, 43 Maine, 578. There can, therefore, be no judgment for a return of the property; nor is a return prayed for in the pleadings.

*C. A. Everett*, for the defendant.

1. The assignment of the permit, without delivery, could not be effectual to convey title in logs already cut, as against attaching creditors without notice. In *Fiske* v. *Small*, 25 Maine, 453, the assignment was made before any lumber had been cut. Here 50 pine and 735 spruce logs had been cut before the assignment, and, being severed from the soil, could

not pass without actual delivery. *Cook* v. *Howard*, 13 Johns., 276. The defendant, having as an officer attached these logs under proper writs, can hold all those cut before the assignment.

2. The permit authorizes the cutting of pine timber only, as it does not fix the rate of payment for any other; and, although it licenses the holder to "cut and remove the timber" from the lot described, this general description is limited by what follows, and by the fact that no other timber than pine is mentioned in the permit. The price fixed for pine is the statute price, and the same statute provides that the Land Agent shall fix the price of spruce, which he has not done in the permit. The memorandum in the margin is not signed nor authenticated. The spruce logs were, therefore, cut without permission, and were the property of Philbrick, and subject to attachment, unless they passed by assignment.

3. The permit is not a legal one, because the statute of 1843, c. 31, § 6, requires persons obtaining permits to file a bond with sureties for the payment of the stumpage. No such bond appears to have been given. An agent cannot bind his principal unless he follows his instructions. *Cowan* v. *Adams*, 10 Maine, 374. The Land Agent not having followed the statute, the permit is void. Neither was it made good by Mason's payment of the stumpage to the State. Being illegal, nothing could give it effect except a statute. Philbrick, having no right to cut the timber, was a trespasser, and the logs liable to attachment, unless they passed to the plaintiff by a sale legally perfected.

4. The transfer from Philbrick to Crocker was illegal, not having been shown to be made to secure Crocker for supplies. It does not appear that Crocker had furnished any supplies up to the date of the transfer. The statute requires the security to be for supplies "advanced," which precludes the idea of subsequent supplies being embraced. Philbrick's conveyance purports to be an absolute sale, and refers to no advances made by Crocker. No advances having been made, the conveyance was void, and, by the statute, Philbrick for-

feited his rights under the permit. Statute of 1843, c. 31, § 2. Neither Philbrick nor Crocker having any right to the logs, and the defendant being in possession, the plaintiff cannot recover in this action, having no better title than Philbrick and Crocker, under whom he claims.

5. Crocker's transfer to the plaintiff conveys his interest in the permit and the logs cut under it, excluding by implication those cut before Crocker received a transfer from Philbrick. But if the permit was illegal, or made void by an illegal attempt to transfer it, as before argued, Mason could derive no title under the assignment from Crocker. If, however, the permit and transfer are both held to be legal, Mason's title was a mortgage, and ineffectual without being recorded, unless possession was taken and retained of the mortgaged property. The fact is, the intention of the parties was to give Crocker, and afterwards Mason, a lien only, and neither of them deemed a delivery necessary, nor was there any delivery made or possession taken under the transfer. The property remained in Philbrick. The transfer of Philbrick to Crocker provided that the latter might control and manufacture the lumber on terms to be afterwards agreed upon; but no such agreement was ever made. Consequently the right of control remained in Philbrick.

6. The attachments and returns made by the defendant were in form, or, if not, are amendable. The plaintiff's writ admits that the logs were in the defendant's possession, and, the executions being in his hands, the inference is that he held them for the purpose of enforcing the attachments. The defendant's returns on different writs embrace 2113 spruce and 267 pine logs. The presumption is that these were different logs, and not that the same logs were attached on 19 different writs. If the permit and transfers were all valid, and Mason's title good, still the defendant must hold the logs cut by Philbrick before the first transfer, as there is no pretence of actual delivery by Philbrick to Crocker, by Crocker to Mason, or by Philbrick to Mason, and the evidence of Ma-

son's taking the logs into possession and retaining them is far from satisfactory.

It appears that the logs cut before and after the transfer from Philbrick to Crocker were mingled together so that they could not be distinguished; in which case, the defendant is entitled at least to the number of logs cut before that transfer, 50 pine and 735 spruce, it appearing that the logs so intermingled were of equal value. *Hasseltine* v. *Stockwell*, 30 Maine, 237.

The opinion of the Court was drawn up by

KENT, J. — In this action of replevin the plaintiff claims title and the right of possession in 267 pine and 2113 spruce mill logs. The defendant claims that, at the time when this writ was executed, he had a right to hold these logs, against the plaintiff, by virtue of an attachment he had made on sundry writs against Rufus B. Philbrick.

The plaintiff claims title from the same Rufus B. Philbrick, who had a permit from the Land Agent of the State, which he assigned to Samuel E. Crocker, conveying to him, also, " all the timber he had cut and which he might cut under said permit." Crocker assigned the permit to Mason, the plaintiff, and the lumber cut under the same. At the time of the assignment to Crocker, he gave Philbrick a written agreement to furnish him with supplies and money to carry on the operation.

1. The first objection of the defendant to the plaintiff's title, is that the original permit from the State to Philbrick is void, because it has not been shown that a bond, with sureties, for the payment of the stumpage, was given as required in § 6 of chap. 31, of the laws of 1843, under which the permit was granted.

Whether this requirement is to be regarded as absolutely essential to the validity of the permit, or as directory only, may be a matter of doubt. The provision is, that " all persons *obtaining* permits shall be required to give a bond for the payment of the stumpage, and performance of all the conditions

of the contract." The statute does not, in terms, declare the permit void unless such bond is given; as it does in reference to an assignment, hereafter to be considered.

The permit is evidence of a license to cut, from the authorized agent of the State; and, in the absence of all evidence to the contrary, we may presume that that officer has done his duty, and has taken the bond which the law requires. The bond is a matter subsequent to, and independent of the permit.

There is another ground on which the plaintiff may rest. If the permit was not strictly according to the statute, Philbrick might be a trespasser as against the State, and the State might seize all the timber, whether in his hands or in that of his vendee. But, until the State interfered, he might hold and sell the logs thus cut. His vendee would take his right and title, subject to the right of the State. · In this case *both* parties claimed under Philbrick. If his title in the logs was absolutely void, it was void against the defendant as well as the plaintiff. The State has not interposed, but, as it appears, has by its agent received payment in full. We see no objection to the title of Philbrick, so far as these parties are concerned.

This reasoning applies, also, to the objection that the permit does not fix a price for spruce, even if the fact is established. This is denied by the plaintiff, and on inspection it appears that the permit is general for "timber thereon;" and the price of spruce is stated on the opposite page of the same sheet, in the handwriting of the Land Agent.

2. The defendant objects to the validity of the assignment, and invokes the second section of the Act of 1843, before cited. That section provides that no transfer of such permit shall be made by the person obtaining it, except for the purpose of securing payment for supplies advanced for operations under the same, and that any attempt at transfer, except for said purpose, shall operate to render void the rights attempted to be transferred." It is in evidence, and not denied, that Crocker did, on the day he took the assignment, agree to

furnish supplies for the operation; and that he and Mason did furnish them. But the defendant insists that such assignment could only be legally made to secure supplies already advanced, and could not cover advances to be made in the future. The objection rests upon the tense of the word "advanced." We cannot hesitate to reject this construction, which would defeat the manifest purpose of the enactment. The Legislature did not intend to prevent operators from obtaining supplies during the season, by assignment of the permit; but did intend to prevent the issuing of licenses to irresponsible, nominal or fictitious parties, who might, according to preconcerted arrangements, immediately transfer the permit to another party. The usual course of business was well known to the Legislature; and it would require the most certain and positive language to induce the Court to believe that it was the purpose to interfere with or reverse that long established usage. An assignment to secure payment for supplies advanced, is an assignment which has for its object the obtaining of supplies for the operation as needed, and the security of the payment for such supplies. It is an assignment to secure advances, and when they are made it secures payment for supplies advanced.

3. The next objection is, that there was no sufficient delivery from Philbrick to Crocker, at least of a part of the timber. In the case of *Fiske* v. *Small*, 25 Maine, 453, it was decided, where a permit to cut timber has been assigned, that all the timber afterwards cut under it was the property of the assignees, and no delivery was necessary as against subsequently attaching creditors of the assignor. This authority covers all the timber, in this case, except about 735 spruce and about 50 pine logs, which had been cut before the assignment to Crocker. But the defendant insists that as to the logs cut before the assignment, the case cited, and the law as there explained, does not apply; that as to these logs the title could not pass, as against an attaching creditor, until a delivery, or what is equivalent thereto, is proved.

There is, doubtless, a distinction in this respect, between

the two lots of logs.  It is now well settled that a delivery of the thing sold is necessary as against every one but the vendee.  As to him, the title passes without delivery, where all the other requisites to make a valid sale are proved. *Vining* v. *Gilbert*, 39 Maine, 496.  This rule does not, of course, apply to cases arising under the statute of frauds, where a sale is set up by proof of delivery, without any memorandum in writing, or payment of the price.  In such a case, delivery is the essential thing.  *Ludwig* v. *Fuller*, 17 Maine, 167.  In this case, the sale was in writing.

If the title, as between Philbrick and Crocker, passed without delivery, then delivery is not an element in this sale, but is required for some other reason.  This reason is, that the law regards the purchaser as acting unfairly and fraudulently in not taking delivery and possession, and allowing the seller to hold out the appearance of being the owner, and thereby inducing third parties to purchase or give credit to their injury.  *Ludwig* v. *Fuller*, before cited.

The common law, as formerly expounded, and as still maintained in some states, regarded a continual possession in the vendor as *ipso facto* fraudulent, and as rendering void a sale otherwise perfect, as against subsequent purchasers or attaching creditors.  In this State this principle is modified, so far as to regard this fact of possession as one of the *indicia* of fraud only; which may be explained consistently with the honesty of the transaction.

But no cases have gone so far as to dispense entirely with proof of a delivery, actual or symbolical, or proof of something equivalent.  But as that delivery may give only a momentary possession, or be symbolical, or of a part for the whole, the actual knowledge of a transfer may thus be communicated to very few, if to any, except the parties.  The object of delivery, as of change of possession, being to give notice that another person has a claim or title to the property, it has been decided, in analogy to cases of livery of seizin, or of actual notice of a deed not recorded in real actions, that proof of actual notice of a sale or transfer is equivalent to

delivery. *Ibid.; Pratt* v. *Parkman*, 24 Pick., 42. And, before the recent statute, possession alone was notice. *McKecknie* v. *Hoskins*, 23 Maine, 230.

In this case it appears that the assignment to Crocker was made on the township, but there is no evidence that any formal delivery was made to him of the logs then cut, but they were of the same mark, and mingled with the others cut afterwards. Crocker sells and assigns to Mason, and he takes possession of all the logs, and they were under his control about two months before they were attached by defendant.

The sale from Crocker to Mason was good between themselves without delivery. This possession of Mason, who claimed under Crocker, was notice to all the world of a change of title and possession, so far as Philbrick was concerned. The fact that it was by Mason, a vendee under Crocker, cannot affect the question of notice. It was sufficient to put all persons on inquiry; and, under the circumstances, is equivalent to, if it is not in fact, a delivery, so far as this defendant is concerned.

Possession by a purchaser, with assent of the vendor, express or implied, is equivalent to a formal delivery. *Buckman* v. *Nash*, 12 Maine, 476. As delivery was not essential to pass the title, the possession, which is its equivalent as notice, may be by or under the title of the first purchaser. It is sufficient if the change of possession is perfected before attachment. *Kendall* v. *Sampson*, 12 Verm., 515.

The decision of this point renders it unnecessary to discuss other points, in reference to the attachments being only to secure liens, which have failed, and in relation to intermixture or confusion of goods, and the difficulty of selecting those cut before from those cut after the assignment, and some other questions which are not without difficulties for the defendant to overcome. *Judgment for plaintiff;—*
*one cent damages and costs.*

TENNEY, C. J., APPLETON, CUTTING, MAY and DAVIS, JJ., concurred.